Submitted December 5, 2008, affirmed April 29, 2009

In the Matter of the Marriage of

Theresa WEISMANDEL-SULLIVAN,
aka Theresa Rose Weismandel,
aka Theresa Rose Sullivan,
aka Theresa Rose Sullivan-Weismandel,
aka Theresa Weismandel,
*Petitioner-Appellant,*

*and*

Clifford SULLIVAN,
aka Clifford Benjamin Sullivan,
*Respondent-Respondent.*

Multnomah County Circuit Court
051070500; A134629

206 P3d 1141

Theresa Weismandel-Sullivan filed the briefs *pro se*.

Eli Stutsman and Monica Finch filed the brief for respondent.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

LANDAU, P. J.

## LANDAU, P. J.

Mother appeals a dissolution judgment, advancing a number of assignments of error, including a challenge to the trial court's decision to award full custody of the parties' three children to father based on her severe emotional difficulties that materially affected her ability to care for the children. Mother contends that the court erred in failing to apply the statutory presumption that it is not in the best interests of the children to award custody to a parent who has committed abuse as defined by the Family Abuse Prevention Act (FAPA), ORS 107.700 - 107.735. We affirm, writing only to address mother's contentions concerning the applicability of the presumption that is triggered by a finding of abuse.

Unless noted otherwise, the relevant facts are undisputed. The parties married in 1998, and three children were born during the marriage. Mother and father permanently separated in July 2005, after having an argument at the family residence. During the argument, father grabbed mother's wrists and pushed her down. Mother called 9-1-1, and the responding police officers arrested father.

The next day, mother petitioned for a FAPA restraining order against father on the basis of his conduct during the argument. At the *ex parte* hearing on the petition, mother insisted that father presented no safety risk to the children and urged the court to allow father to see the children daily. The trial court entered mother's requested FAPA order.

Mother did not serve the order on father until nearly five months later. Her explanation for the delay was that she did not know father's whereabouts and that she had been pressured by family and friends to reconcile with father. During that time, in October 2005, she also requested an "unlimited legal separation" from father, seeking two *ex parte* temporary restraining orders relating to the parties' financial matters and parenting time.

After father was served with the FAPA order in November 2005, he requested a hearing. Shortly after that, father requested full custody of the children upon the dissolution of the parties' marriage. A hearing on the FAPA order

never took place, however, because the parties settled the disputed matters of custody, parenting time, and financial support, at least on a temporary basis pending the dissolution proceeding. As part of the settlement, mother agreed to have the FAPA order vacated. On the parties' stipulation, the trial court consolidated mother's FAPA case with the dissolution proceeding.

At the dissolution trial, the parties' testimony included their descriptions of the July 2005 argument. Mother testified that father threw a toy at her, grabbed her wrists and pushed her down, and pursued her across the room, threatened to kick her, and scared her. Father admitted that he grabbed her wrists and pushed her down. He denied that he threw the toy, testifying instead that he picked it up and made a gesture to throw it. Father asserted that that argument was the only time he ever "laid a hand" on mother, that he knew his actions were wrong, and that he regretted them. Another witness testified that, several months later, she saw father throw a child's shoe at mother during a parenting exchange.

The parties jointly hired Dr. Strassberg, a custody evaluator, who prepared two written reports and testified consistently with those reports at trial. Strassberg's initial report included a recommendation that father be awarded full custody of the children. In assessing the parties' parenting abilities, he concluded that "[father] displays a care giving profile that is clearly superior to that of [mother]'s." Although he acknowledged that father is not without faults, Strassberg described father as an active and engaged parent throughout the children's lives, as interacting with the children in an age-appropriate manner, and as effective at child behavior management. Mother, he said, "presents a more complicated picture." He noted that, although mother is a loving and nurturing parent, she has a history of significant mental health issues and exhibits "significant deficits in providing basic care and fostering the well-being of the children when experiencing subjective relief from those mental health problems." Strassberg noted that mother is knowledgeable about child development, but exhibits a discrepancy between what she knows and her ability to apply that knowledge.

Strassberg's initial report also addressed the parties' July 2005, argument. He opined that "th[e] incident was not part of a pattern of abuse (although [father] did also throw a shoe at [mother] months later)." "Rather," he concluded, "the incident appears to have been the apex of building marital conflict." Strassberg noted the existence of an e-mail that mother wrote after the argument, in which she indicated that she regularly allowed father into her home to care for the children. In light of such a communication, he questioned the authenticity of mother's statements that she fears that father will hurt her.

Mother was dissatisfied with Strassberg's analysis. According to mother, he did not have complete information about the extent to which father emotionally abused her during the marriage. Strassberg agreed to review more than five hours of audiotaped conversations and 200 pages of documents, which mother asserted would demonstrate that father was threatening, controlling, and demeaning.

After that review, Strassberg produced an "addendum" to his initial report, in which he adhered to his conclusion that father should have full custody of the children. He expressed concern about father's tendency to speak critically about mother in the children's presence, but he rejected mother's contention that father had subjected her to a pattern of emotional abuse. Instead, he concluded that nothing in the exchanges recorded by mother—even in those that were made without father's knowledge—demonstrated that father engaged in activities designed to create an atmosphere of fear and control in the parties' relationship.

The trial court awarded father full custody of the children, with unsupervised parenting time for mother. The court set forth its findings and conclusion in a letter to the parties, which provides, in part:

> "Having heard the evidence and considered the Exhibits in this case, the Court finds that [father] should be awarded the legal care, custody and control of the parties['] minor children. The Court is satisfied that [mother] has suffered from severe emotional difficulties which interfered materially with her ability to function as a parent. Despite the fact

that she was a stay-at-home parent, the Court is not persuaded that she was or is the primary parent of these children.

"It will serve no purpose for the Court to make extensive findings regarding the character of these two people; both of them have been subjected to excruciating accusations. * * * Neither party seems able to take any real responsibility for the circumstances in which they find themselves. [Father] is better suited, in the Court's opinion, to provide the children with structure and consistency. [Mother] is a devoted parent who by all accounts has much to offer her children."

The court made no finding of abuse relating to the allegations that served as the basis for mother's FAPA order petition.

On appeal, mother asserts that the trial court erred in awarding custody to father. That is so, she argues, because father committed acts of abuse against her and, therefore, awarding custody to father is presumptively not in the best interests of the children. Because the evidence was insufficient to rebut the presumption, mother contends, the trial court erred in awarding custody to father. In the alternative, mother argues that, even if the evidence was sufficient to rebut the presumption, the statutory factors weigh in favor of awarding custody to her.

According to father, the trial court did not err. He responds that the statutory presumption is inapplicable in this case because there was no finding that abuse occurred. Even if the presumption was triggered, father argues, sufficient evidence in the record exists to rebut it, and the court's ultimate decision to award custody to him was correct.

ORS 107.137, which governs child custody determinations, provides, in part:

"(1)   In determining custody of a minor child * * *, the court shall give primary consideration to the best interests and welfare of the child. In determining the best interests and welfare of the child, the court shall consider the following relevant factors:

"(a)   The emotional ties between the child and other family members;

"(b)   The interest of the parties in and attitude toward the child;

"(c)   The desirability of continuing an existing relationship;

"(d)   The abuse of one parent by the other;

"(e)   The preference for the primary caregiver of the child, if the caregiver is deemed fit by the court; and

"(f)   The willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child. * * *

"(2)   * * * [I]f a parent has committed abuse, *as defined in ORS 107.705,* there is a rebuttable presumption that it is not in the best interests and welfare of the child to award sole or joint custody of the child to the parent who committed the abuse."

(Emphasis added.) In turn, ORS 107.705 provides, in part:

"(1)   'Abuse' means the occurrence of one or more of the following acts between family or household members:

"(a)   Attempting to cause or intentionally, knowingly or recklessly causing bodily injury.

"(b)   Intentionally, knowingly or recklessly placing another in fear of imminent bodily injury."

ORS 107.710 relates to FAPA order petitions and provides, in part:

"(1)   Any person who has been the victim of abuse within the preceding 180 days may petition the circuit court for relief under ORS 107.700 to 107.735, if the person is in imminent danger of further abuse from the abuser. * * *

"(2)   The petitioner has the burden of proving a claim under ORS 107.700 to 107.735 by a preponderance of the evidence."

Mother argues that the trial court's custody determination was erroneous because it failed to properly consider father's "abuse" of mother, as defined in ORS 107.705(1). Citing *Ringler and Ringler*, 221 Or App 43, 188 P3d 461 (2008), mother asserts that, "when [she] obtained the restraining order the day after the abuse, the trial court necessarily

found that 'abuse' within the meaning of ORS 107.705 occurred." That finding, mother insists, automatically triggers the statutory presumption in ORS 107.137(2), which she contends is unrebutted on this record.

Father responds that "[t]he absence of a fully litigated hearing on the FAPA allegations with a resulting judicial determination makes *Ringler*'s rationale inapplicable." In any event, father argues, the evidence in the record was more than ample to rebut the statutory presumption.

As we have noted, the court in the dissolution case did not make a finding one way or the other whether father had committed "abuse" sufficient to trigger the presumption in ORS 107.137(2). We reject mother's contention that the mere entry of an *ex parte* FAPA order, by itself, implies such a finding and triggers that presumption.

In *Ringler*, the trial court awarded custody of the parties' children to the father. 221 Or App at 45. The court did so despite the fact that a FAPA order that the mother had obtained against the father was still in effect at the time of the dissolution trial. We concluded that the court erred in failing to apply the presumption in ORS 107.137(2). Noting that the father had contested the mother's petition for a FAPA order and that the father was represented by counsel at the FAPA hearing, we reasoned that, "when [the] mother established the predicate for obtaining the FAPA order against [the] father, she established the predicate for a presumption that it is not in the best interests of the children to award custody to [the] father." *Id.* at 52. We stated that, "before issuing the FAPA order, the court necessarily found that 'abuse' within the meaning of ORS 107.705 occurred, and it is precisely the same 'abuse' that triggers the presumption against an award of custody." *Id.* at 53.

In this case, unlike in *Ringler*, father never had an opportunity to contest the allegations in mother's petition for the FAPA order. After mother served him with the order, father promptly requested a hearing. The hearing never took place, however, because mother agreed to have the order vacated. By itself, the mere fact that the court in the FAPA case determined that mother's petition was sufficient to warrant entry of the *ex parte* order, *see* ORS 107.710, does not

constitute a finding of "abuse" sufficient to trigger the presumption in ORS 107.137(2). The court's decision to enter the order was based only on mother's side of the story, that is, the allegations in the petition and mother's testimony at an *ex parte* hearing. Those circumstances represent a material difference from *Ringler*, and we decline to extend our holding in that case as mother urges in this one.

Mother argues that, nevertheless, father had the opportunity to contest her allegations at the dissolution trial and that the record establishes that father committed acts of "abuse" within the meaning of ORS 107.705(1). She asserts that, when father grabbed her wrists and, in a separate incident, threw a child's shoe at her, he "intentionally * * * caus[ed] bodily injury," ORS 107.705(1)(a). At the very least, she asserts, those actions, in addition to father's gesture to throw a toy at her, put her "in fear of imminent bodily injury," ORS 107.705(1)(b).

We need not determine whether father's conduct constitutes "abuse" within the meaning of ORS 107.705(1), however. Even assuming that the statutory presumption was triggered, on *de novo* review, *see* ORS 19.415(3), we find that the trial court was correct in awarding custody of the children to father. Further explanation regarding the statutory factors and the best interests of the children would not benefit the bench or bar.

Affirmed.